**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**DELTA LOGISTICS, INC.**                                        **PLAINTIFF**

**VS.**                              **05:19-cv-05063-TLB**

**P.A.M. TRANSPORT, INC.**                                   **DEFENDANTS**

### BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Delta Logistics, Inc. ("Delta"), by its attorneys, Friday, Eldredge & Clark, LLP, submits the following Brief in Support ("Brief") of its Motion for Preliminary Injunction ("Motion") against P.A.M. Transport, Inc. ("PAM").

## I.        INTRODUCTION

On February 12, 2019, PAM published a false and defamatory report regarding Delta, a logistics company, on an online carrier monitoring forum known as Carrier411.  In that post, PAM falsely accused Delta of among other things:

UNAUTHORIZED RE-BROKERING OF SHIPMENT

HELD LOAD HOSTAGE

IN-TRANSIT AGREEMENT MODIFICATION

REPEATED PICKUP OR DELIVERY SERVICE FAILURES

FRAUDULENT ACTIVITY

UNETHICAL OR DECEPTIVE BUSINESS PRACTICES

Each of these statements is categorically false.  As PAM admits in the post, _PAM did not book the load in question with Delta_.  It booked the load with another carrier, Complete Delivery Services, Inc., MC553528 ("CDS").  Delta and CDS are separate companies with separate ownership.  PAM had no contract with Delta to carry this load, and Delta was not involved in any way.

1

The false and defamatory statements PAM has published about Delta have caused and continue to cause serious and irreparable injury and damage to Delta's reputation and have caused and continue to cause Delta to lose substantial business.  As discussed below, *Delta is losing in excess of $60,000.00 per week in business as a direct result of PAM's false and defamatory post*.

Delta has demanded that PAM immediately remove the post, but PAM has failed and refused to do so.  Delta therefore respectfully requests that this Court enter a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 requiring PAM to remove the Carrier411 post until this Court can conduct a trial on the merits of Delta's claims.

As discussed below, all of the requirements for injunctive relief are present in this case. Absent such relief, Delta will continue to suffer massive and irreparable harm.  In sharp contrast, PAM will suffer no harm whatsoever if relief is granted.  For each of these reasons, Delta respectfully requests that its motion for a preliminary injunction should be granted.

## II.     FACTUAL BACKGROUND

Delta is a logistics company with a principal place of business at 9835 SW Commerce Circle Wilsonville, Oregon 97070.  Delta partners with manufacturers, distributors, and shippers to provide customized transportation solutions to meet their specific needs.  Delta was formed in 2010.  In 2013, Delta sold part of its company, which then incorporated in Oregon as CDS under new and separate ownership.  CDS has a principal place of business next door to Delta at 9825 SW Commerce Circle Wilsonville, Oregon 97070.  Delta and CDS have operated separately since 2013.

Carrier411 is an online carrier monitoring forum.   Companies that use logistics companies, brokers, and carriers can access Carrier411 to evaluate their carriers, leave comments

2

and reports, and track their carriers' safety ratings, among other things.  Ultimately, Carrier411 is intended to help businesses make educated, informed decisions about the logistics companies they use.  A broker or customer who has a load available for carry will inevitably turn to Carrier411 before hiring a carrier.  They will search the carrier's history through Carrier411, at which point any negative reviews would come time light, by entering the carrier's Motor Carrier Number.  Oftentimes, a large, commercial broker will have internal software in place that automatically rejects from consideration any carrier that has a negative report on Carrier411.

Sometime in late 2018 or early 2019, CDS contracted in some form with PAM to carry a load of paper cups (the "Shipment").  The Shipment apparently arrived a few days late because on February 12, 2019, PAM posted on Carrier411 that the load was late because the CDS truck broke down in Iowa.  *See* Ex. A to the Complaint (the "Carrier411 Post").  PAM's Carrier411 Post identified Delta as the carrier at issue, though, and claimed that because Delta is "related" to and has "the same address" as CDS (and also because, supposedly, PAM "received an update from a Delta […] phone number"), Delta was to blame for the Shipment's tardiness.  PAM claimed that due to this relatedness, Delta double-brokered PAM's Shipment and engaged in fraudulent, unethical, and deceptive business practices.

None of this is true.  Delta never contracted to carry the Shipment (or any other load during the applicable timeframe) for PAM.  Delta, in fact, was totally uninvolved with the Shipment.  PAM hired CDS to carry the Shipment, not Delta.  And while Delta and CDS's addresses are very similar, they are not the same—they are next door to one another—and the companies are entirely separate entities with different phone numbers, bank accounts, ownership, trucks, drivers, leases, and insurance policies.

PAM knew that it hired CDS, not Delta, to carry the Shipment.  And PAM knew that their addresses and phone numbers are not the same because their addresses are public records and PAM called both entities before it wrote the Carrier411 Post.  Still, PAM authored and published the Carrier411 Post on February 12, 2019.  A mere 8 days later, Delta wrote PAM and demanded that PAM remove the Carrier411 Post so that Delta's goodwill and business reputation would not be tarnished by PAM's demonstrably false statements.  On March 14, 2019, PAM responded to Delta and said it would not remove the Carrier411 Post.  But then, in an odd semi-reversal, PAM said that it needed more time to investigate Delta's demand.  PAM also claimed to have a load confirmation for the Shipment, but PAM has not produced it or further explained its relevance to its position that Delta is to blame.

Since PAM published the Carrier411 Post, at least one current customer has terminated its business relationship with Delta and explained that it was doing so because of the Carrier411 Post.  Other brokers or customers have rejected Delta's services because of the Carrier411 Post. And Delta cannot know how many brokers or customers have seen the Carrier411 Post and taken their business elsewhere in light thereof.  This sort of harm to Delta's reputation and industry goodwill is exceedingly detrimental to Delta's business and constitutes irreparable harm under the law.  Delta is likely to succeed on the merits against PAM on its defamation and its tortious interference claims.   For these reasons, which are explained in more detail below, Delta respectfully requests that this Court enter a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 requiring PAM to remove the Carrier411 Post from the internet until this Court can conduct a trial on the merits of Delta's claims.

### III.   LAW & ARGUMENT

#### A.   PRELIMINARY INJUNCTION STANDARD

In determining whether to grant a motion for preliminary injunction, a district court considers: (1) the movant's probability of success on the merits; (2) the threat of irreparable harm to the movant absent the injunction; (3) the balance between the irreparable harm and the injury that the injunction's issuance would inflict on other interested parties; and (4) the public interest. *See Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*).  No single factor is dispositive, and all factors must be considered to determine whether, on balance, they weigh toward granting the injunction.  *Baker Elec. Coop. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994 (citing *Dataphase*, 640 F.2d at 114).  The focus of the district court's decision is "whether the balance of the equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."  *Dataphase*, 640 F.2d at 113.

The grant of a preliminary injunction is reviewed on appeal for abuse of discretion. *Dataphase*, 640 F.2d at 114, n.8.  A court abuses its discretion "when a relevant factor that should have been given significant weight is not considered, when an irrelevant or improper factor is considered and given significant weight, or when all proper and no improper factors are considered, but the court in weighing those factors commits a clear error of judgment."  *Baker Elec. Coop.*, 28 F.3d at 1472.

#### B.   IRREPARABLE HARM

Harm is irreparable if there is no adequate remedy at law.  *Tempur-Pedic Int'l, Inc. v. Waste to Charity*, 2007 U.S. Dist. LEXIS 11435 (W.D. Ark. Feb. 16, 2007).  Although monetary harm alone is not typically sufficient to constitute irreparable harm, irreparable harm is shown

5

when allegedly unlawful acts threaten the viability of a business. *Dos Santos, S.A. v. Beebe*, 2006 U.S. Dist LEXIS 24956 (W.D. Ark. March 22, 2006). Likewise, the loss of goodwill and the loss of business, the monetary value of which would be impossible to calculate, are irreparable harms. *See Medtronic, Inc. v. Gibbons*, 684 F.2d 565, 567-69 (8th Cir. 1982).

Delta will be irreparably harmed in the absence of a preliminary injunction ordering PAM to remove the Carrier411 Post. Delta is already losing customers due to the Carrier411 Post. It is also suffering crippling harm to its reputation in the industry, and prospective customers are being turned away by the Carrier411 Post. This is precisely the type of irreparable harm that injunctive relief is designed to remedy.

## C.    LIKELIHOOD OF SUCCESS ON THE MERITS

Delta asserts 2 causes of action under Arkansas law against PAM: (1) defamation and (2) tortious interference with a business expectancy. The elements of a defamation claim are: "(1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages." *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 955-56, 69 S.W.3d 393, 402 (Ark. 2002). And the elements of a tortious interference claim are: "(1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Stewart Title Guar. Co. v. Am. Abstract & Title Co.*, 363 Ark. 530, 540, 215 S.W.3d 596, 601 (Ark. 2005). Delta is likely to prevail on the merits of both claims.

FEC\45082\0001\6965236.v1-4/3/19

## 1. Defamation

The Carrier411 Post is demonstrably false and indisputably damages Delta's reputation and goodwill. By its very nature, it is defamatory. It purports to state as fact that Delta engaged in fraudulent business practices and double-brokered the Shipment—none of which is true. The Carrier411 Post identifies Delta both by name and business address and by its Motor Carrier Number, making it clear to whom PAM is referring. PAM published the Carrier411 Post through a forum widely used in the shipping industry. And PAM wrongfully posted the Carrier411 Post without even a cursory, much less thorough, investigation into the facts surrounding its claims.

If PAM had made a good-faith effort to determine what was going on, it would have seen that Delta and CDS do not share an address or have the same phone number. Instead, PAM would have seen that Delta and CDS are neighbors and would have realized that Delta transferred PAM's representative to CDS when he called. But PAM forged ahead with blinders on, preferring to adopt its own false narrative in the Carrier411 Post. Plus, at least one current Delta customer has terminated its relationship with Delta and cited the Carrier411 Post as the cause. . Moreover, Delta has suffered at least $232,895.00 in damages from loads that were denied by brokers or customers since the Carrier411 Post was written. In every week of 2019 before the Carrier411 Post was written, Delta had carried more than $1.18 million in loads per week. Since the Carrier411 Post was written (with the exception of the first week after the Carrier411 Post was written)[1], Delta has not carried more than $1.12 million in loads per week in any given week—a difference of *at least* $60,000 per week for over a month. All of this demonstrates that

---

[1] This is because a Carrier411 report is usually cleared through Carrier411 internally and posted 2-3 days after it is written. Also, Delta books some freight as far as a week in advance, and there would be some lag time between the Carrier411 Post's publication and the public's receipt of it.

7

Delta's reputation and goodwill have been harmed.  For all these reasons, Delta is likely to prevail on its defamation claim.

## 2.  Tortious Interference

Delta is similarly likely to prevail on its tortious interference claim.  Delta has a valid business expectancy in its goodwill and customer relationships.  PAM knew that Delta had goodwill and customer relationships. By posting the Carrier411 Post, PAM could only be intentionally attempting to damage Delta's goodwill and reputation.  As explained above, Delta has suffered damages.  For these reasons, Delta is likely to succeed on the merits of this claim as well.

### D.      BALANCE OF HARMS

Delta has spent almost a decade developing its customer relationships and establishing its reputation in the carrier industry.  A preliminary removal of the Carrier411 Post will maintain the status quo with virtually no detriment to PAM until this Court can reach a decision on the merits. PAM would not be harmed or burdened in any way if this Court ordered it to remove the Carrier411 Post pending trial.  On the other hand, if the Carrier411 Post remains, Delta will continue to lose actual and prospective business, and its significant business relationships and good reputation will be irreparably damaged—all because of a demonstrably false internet post.

### E.      PUBLIC INTEREST

A preliminary injunction is in the public's best interest because as long as the Carrier411 Post wrongly names Delta as a fraudulent actor and double-brokerer, the industry will be misled. *See Mut. of Omaha Ins. Co. v. Novak*, 775 F.2d 247, 249 (8th Cir. 1985) (upholding trial court finding that injunction necessary to protect public interest in avoiding market confusion).  This factor also weighs in favor of injunctive relief.

8

FEC\45082\0001\6965236.v1-4/3/19

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Delta respectfully requests that this Court grant its Motion, issue a preliminary injunction ordering PAM to remove the Carrier411 Post until further Order of this Court, and award Delta any further relief to which it may be entitled.

Respectfully submitted,
Angela C. Artherton, Ark. Bar No. 2012156
Kael K. Bowling, Ark. Bar No. 2016220
FRIDAY, ELDREDGE & CLARK, LLP
3350 S. Pinnacle Hills Parkway, Suite 300
Rogers, Arkansas 72758
Phone: (479) 695-6049
Fax: (501) 244-5389
aartherton@fridayfirm.com
kbowling@fridayfirm.com
By:        /s/ *Angela C. Artherton*
     Angela C. Artherton

*Attorneys for Plaintiff*

9